ORDER DENYING PETITION FOR REVIEW
GARY P. SULLIVAN, Chief Justice.
After reviewing the petition, the Tribal Court’s findings, the entire lower Court record, and the various responses to the petition, this Court finds:
1. Jeannette L. Youpee, III (hereafter Jeannette) is the biological mother of S.T. (d.o.b. 5/31/91), L.T. (d.o.b. 10/12/92) and D.R.E. (d.o.b. 4/28/94). Vernon Red Eagle, Sr., is the biological father of D.R.E. The issue of the parental fitness of Jeannette has been ongoing since 1991, when S.T. was removed from her care and supervision. In 1992, S.T. was removed from the care of the natural father, Rodney Tuttle, due to her brother, L.T., being hospitalized while in the care of the father. Rodney Tuttle eventually relinquished his parental rights regarding S.T. and L.T. in July 1997. In February, 1993, Jeannette signed a Service Treatment Agreement (STA) with the Montana Department of Public Health and Human Services (DPHHS), Child and Family Services (CFS). According to the agreement Jeannette was to complete an alcohol component and parenting classes. She failed to complete her obligations under the STA. Nonetheless, S.T. and L.T. were returned to her on or about April 1993. CFS continued to work with Jeannette and a new STA was agreed to in May 1993. There is no evidence that any portion of this STA was ever completed.
2. In August, 1993, S.T. and L.T. were removed from Jeannette’s care by BIA Social Services for leaving the children unsupervised. The children were originally placed with relatives, however, when that placement proved unsuccessful, the children were returned to foster care. In August, 1993, Jeannette entered into yet another STA. She was referred for a mental health evaluation based upon her chemical dependency evaluation. Again, Jeannette failed to complete the parenting classes as required by the STA. In December 1993, Jeannette did complete a mental health evaluation at the Indian Health Service (IHS) and was diagnosed with an Axis 2: Borderline Personality Disorder.
3. D.R.E. was born to Jeannette and Vernon Red Eagle, Sr. on April 28, 1994. In May 1994, she signed another STA, substantially completing it. She also submitted to mental health counseling. However, in May 1994, when D.R.E. was less than one month old, he was removed from the care of his parents following a referral to BIA Social Seivices wherein the biological father was found intoxicated and Jeannette was found a few blocks from the home, intoxicated and a victim of a physical beating. S.T. and L.T. were still in foster care at this time. However, in March 1995, S.T. and L.T. were returned to the care and custody of Jeannette by Tribal Court Order. In August, 1995, D.R.E. was also returned to Jeannette by Tribal Court order.
4. In August 1995, the children were once again removed from Jeannette and Vernon. BIA Social Seivices received a referral that L.T. was observed to have numerous bruises on his body at the IHS Clinic. BIA Social Services and police later arrived at Jeannette and Vernon’s res *228 idence. They observed L.T. sitting along the walkway and was soaking wet up to his pants. His top right lip was very swollen, a cut above the left eyebrow and a scratch on the right side of his neck. L.T. underwent a medical examination, which revealed numerous bruises about the body in various stages of healing. The conclusion from this examination was a strong suspicion of child abuse. D.R.E. was also found injured and in various stages of healing from alleged abuse while in the care of Jeannette and Vernon. In November 1995, Jeannette and Vernon entered into yet another STA, which required chemical dependency evaluations, and strict adherence to recommendations of the CFS. These recommendations included further parenting classes, mental health evaluations, maintenance of adequate housing and abstinence from drugs and alcohol.
5. In January 1996, the Tribal Court held a Custody Review Hearing in which Jeannette provided documentation of completion of most of the requirements of the STA. Based upon these documents and the recommendation of the IHS Mental Health Unit, the Tribal Court agreed to return the children to Jeannette in phases. By March 1996, S.T. and D.R.E. were returned, with L.T. remaining in foster care.
6. In April 1996, D.R.E. arrived at the Poplar Hospital with a head injury. He was flown to Deaconess Medical Center in Great Falls. Subsequent medical examination revealed numerous head injuries with bruising, abrasions and multiple old scars covering his body. Jeannette was federally charged and eventually pled guilty to assaulting D.R.E., such assault resulting in substantial bodily injury.
7. Throughout 1998 various Custody Review hearings were held wherein the children remained in foster1 care. Jeannette and Vernon were ordered to complete their existing STAs. Dr. Walczak, IHS Psychologist, recommended that Jeannette have no contact with the children until such time as she is able to abstain from drugs and alcohol for a period of at least six to twelve months. S.T.’s counselor, June Odegard, M.S., L.C.P.C., recommended no contact between S.T. and Jeannette, Vernon and certain other family members as well. The ‘other family members’ portion of the recommendation was added due to allegations of possible sexual abuse.
8. Finally, on January 19, 1999, the Tribal Court found that the best interests of the children would be seived by: 1) the continuation of wardship, with the children continuing in their foster homes, 2) allowing reasonable visitation to the biological parents and 3) by setting the matter for a termination of parental rights hearing to be held within sixty (60) days.
9. On March 10, 1999, the Tribal Court ordered a Custody Review Hearing to be held on March 22, 1999. On the same day, co-petitioner/appellee Sharon Damm, the foster parent of L.T. and D.R.E., filed separate Petitions for Termination of Parental Rights and Adoption regarding L.T. and D.R.E. The lower Court file is silent as to whether the March 22, 1999, hearing was held. On May 20, 1999, the BIA Social Services submitted a Report to the Court, which chronicled the history of their involvement with the three children from 1991.
10. On June 2, 1999, the Tribal Court ordered a Custody Review Hearing to be held on June 14, 1999. On June 9, 1999, Jeannette filed a Custody Petition on behalf of the three children.[2] Due to the *229 unavailability of the interim Guardian ad Litem, a Motion for Continuance was filed and granted, ordering that the hearing be continued within sixty (60) days of June 14, 1999. An order to Appear for a Custody Review followed on June 24, 1999, ordering that the hearing be scheduled for July 26, 1999.
11. On July 12, 1999, co-petitioners Sharon and Donald Haven, foster parents of S.T., filed a Petition for Termination of Parental Rights requesting that the Court either place S.T. -with the co-petitioners as her adoptive parents or, alternatively appoint co-petitioners as the child’s permanent legal guardians until she attains the age of 18 years.
12. On July 13, 1999, Jeannette filed a Motion for Pre-Trial Conference requesting, inter alia, that discovery deadlines be exchanged, along with designation of witnesses and that the July 26th hearing be continued to August 26, 1999. The Court granted this Motion and re-scheduled the hearing for August 26, 1999. The Court also scheduled: 1) That formal discovery be completed by September 15, 1999; 2) That any pre-trial motions, with supporting briefs, be filed with the Court and served upon all other parties by October 1, 1999; and 3) That trial shall begin on October 18, 1999, on the two petitions for termination of parental rights and continue thereafter, if necessary.
13. On September 16, 1999, petitioner/appellee CFS filed its Motion for Evaluation Reports and Social Studies with supporting memorandum. The Motion was granted, with the Court ordering the report to be filed no later than October 8, 1999.
14. On September 24, 1999, the Court issued an Order to Vernon Red Eagle Sr. and Jeannette Youpee III to appear at the October 18, 1999. On September 29, 1999, Joseph Youpee, the maternal grandfather of the three children, filed a Custody Petition[3] on behalf of the subject three children, as well as one of Jeannette’s children not subject to the termination proceedings.
15. On October 12, 1999, appellee CFS made an ex parte motion to the Court to continue the October 18th hearing due to the fact that none of the parties had received the Court’s October 6th order regarding the evaluations and home study. The motion went on to allege that the CFS would not be able to complete the required reports in time for the hearing on October 18th. The Court granted the motion and re-scheduled the hearing for November 3, 1999.
16. The CFS completed its evaluations and home study on all of the pertinent parties on November 1st and 2nd and filed them with the Court on November 3, 1999. The reports indicate that S.T. was 101 months old at the time of the report and that she had spent 72 months of her life in foster care and that L.T. was 85 months old at the time of the report and that he had spent 72 months of his life in foster care. From the record, we note that D.R.E. was 66 months old and that he had spent 64⅜ months in foster care. Of the 72 months in foster care, S.T. has been with the Havens 49 months. Of the 72 months in foster care, L.T. has been with Sharon Damm 68 months. Of the 64½ months in foster care, D.R.E. has been with Sharon Damm 42 months. In its recommendations, the department concluded that it was in the best interests of the *230 three children for the Court to terminate the parental rights of both Jeannette and Vernon. The CFS also concluded that it was in the best interests of the three children to continue in the homes of their respective foster parents and that each of the foster parents should be allowed to adopt the children.
17. The hearing concluded on November 4, 1999 and the matter was submitted. The Court, the Honorable John D. Christian, presiding, issued its order on January 12, 2000, terminating the parental rights of Jeannette and Vernon and allowing the children to remain in the homes of the foster parents.
18. On January 25, 2000, the Court, the Honorable Juanita Azure, presiding, issued its Amended Order.[4] The changes made in the amended order consist of the following:
Paragraphs 3 and 4 of the original order were omitted from the Amended Order. Paragraphs 3, 4 and 5 of the Amended order did not appear in the original.
Paragraph 3 of original order states: “That the above named children (sic) care and supervision by any and all Social Service Agencies shall be terminated.”
Paragraph 4 of original order states:
“That Sonja Tuttle shall be placed under the care and supervision of adoptive parents Don and Sharon Haven and Lee Tuttle and Darían Red Eagle shall be placed under the care and supervision of adoptive parents, Sharon Damm in accordance with Title VI, Chapter 1 of the CCOJ.” Paragraphs 3, 4, and 5 of the Amended Order state:
“3. That Darían Red Eagle shall remain under the care and supervision of the Bureau of Indian Affairs, (BIA) division of Social Services.
4. That Sonja and Lee Tuttle shall remain under the care and supervision of the Montana Department of Public Health and Human Services, Child and Family Services (CFS).
5. Both Social Service Agencies shall adhere to the provision of Title VI, Chapter 1, of the Fort Peck Tribal Comprehensive Code of Justice (CCOJ) regarding the prospective adoptive parents, Don and Sharon Haven and Sharon Damm.”
Except for the changes cataloged above, the two orders are identical.
19. On February 8, 2000, Jeannette filed a Petition for Review of the Order issued on January 12, 2000. She bases her petition upon allegations that, “(she) was not given the opportunity to respond to all of the allegations made. The Court always continued (her) court hearings all the time and it was frustrating.” Mary L. Zemyan, Esq., of Wolf Point, MT., represented Jeannette at all stages of the proceedings in the Tribal Court. Jeannette appeal's in this court pro se.
20. On February 23, 2000, Terrance L. Toavs, Esq. of Wolf Point, MT. filed a response on behalf of Petitioner/Appellee Phyllis Klotz, Department of Public Health and Human Services, Child and Family Services, State of Montana, (herein CFS), contending that Jeannette’s petition was not filed timely.
21. On February 25, 2000, David L. Irving, Esq. of Glasgow, MT., filed a response on behalf of Co-Petitioners/Appel-lees Don and Sharon Haven, contending that Jeannette’s petition was not filed timely and that she failed to provide a statement supporting her petition.
*231 22. On February 28, 2000, Laura Christoffersen, Esq. of Culbertson, MT., filed a response on behalf of Co-Petitioner/Appellee Sharon Damm, stating that “in addition to the matter stated by the DPHHS (in their response to Jeannette’s petition), counsel would like to point out that the record below indicates that not one of the professionals who had contact with either Jeannette Youpee or the children believed that the children could or should be returned (to) Jeannette Youpee or that visitation for the children with Jeannette Youpee should begin. In light of such factual evidence it is impossible to determine upon what factual or legal basis Jeannette Youpee’s appeal should even be considered.”
23. Appellees LaFon Copenhaver, Fort Peck Guardian ad Litem, representing the Fort Peck Tribes and Appellee/Re-spondent Vernon Red Eagle Sr,[5] did not file appearances in this review.
24. To be timely, a Petition for Review must be filed within 15 working days “from the date of entry of the final order or judgment appealed from” Title II CCOJ § 207 (“15 days”); Gambles v. Ruck Elk Jr. FPCOA # 072 (holding “15 days” as “working days”). Fifteen working days from January 12, 2000, (Original order) expired on February 2, 2000. Fifteen working days from January 25, 2000, (Amended order) expired on February 15, 2000. As previously noted, Jeannette’s petition was filed on February 8, 2000.
25. On June 2, 2000, this Court met and discussed the timeliness issue. In a vote of 2-1, the Chief Justice dissenting, this Court held that the petition was filed timely. The majority argued that the amended order extended the time to February 15th. The Chief Justice argued that the amended order did not alter any of the rights or obligations of the appellant and therefore, the petition must have been filed on or before February 2nd to be timely.
26. Jeannette’s contention that she was not given an opportunity to respond to all of the allegations is without merit. She was represented at all stages of the proceedings by able counsel. It was her own counsel that caused the Court to issue a detailed schedule regarding discovery, witness lists and pre-trial motions. Nothing in the record indicates that Jeannette was not given every opportunity to respond to the allegations. Indeed, the record bears a long history of the Court’s patience with Jeannette. Jeannette’s contention that the “Court always continued (her) court hearings all the time and it was frustrating” is also without merit. We note that the Court on January 19, 1999, ordered the hearing within sixty (60) days, and the hearing, in fact, was not held until early November 1999. However, Jeannette does not state how these ‘delays’ prejudiced her case, other than they were “frustrating.” It could be argued that this additional time inured to Jeannette’s benefit in that she could show herself a more loving and capable parent. The additional time might also have prolongated Jeannette’s alcohol and drug abstinence, which also would have inured to her benefit. In the absence of a showing of prejudice, it must be concluded that the delay from March 1999 to November 1999, does not provide Jeannette with any legal basis for review by this Court.
IT IS NOW THEREFOR THE ORDER OF THIS COURT THAT:
1. Based upon the papers filed by Appellant, this Court could not determine any legal basis upon which to *232 review the lower court judgment, therefore, the Petition for Review is denied.
2. All Tribal Court orders heretofore stayed or not acted upon because of, or pursuant to, the pendency of this Petition, are herewith restored and shall be given full force and effect without further delay.

. The petition included a fourth child, V.B.R.E. who is not involved in this Petition for Review.

. The petition does not bear a case number and it cannot be determined from the file whether the Court acted upon this petition. A DPHHS home study disclosed that Jeannette lives in an apartment with her biological lather Joseph Youpee.

. The amended order is silent regarding its own necessity.

. Although Vernon Red Eagle's parental rights were terminated in the same proceeding, he is considered an appellee pursuant to Title II CCOJ 2000 § 207(c).